**[J-49A-2020 and J-49B-2020] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| UNIONTOWN NEWSPAPERS, INC., D/B/A THE HERALD STANDARD; AND CHRISTINE HAINES, | : | No. 76 MAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 66 MD |
| Appellees | : | 2015 dated March 23, 2018. |
| | : | |
| | : | ARGUED:  May 21, 2020 |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, | : | |
| | : | |
| | : | |
| Appellant | : | |
| UNIONTOWN NEWSPAPERS, INC., D/B/A THE HERALD STANDARD; AND CHRISTINE HAINES, | : | No. 77 MAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 66 MD |
| Appellees | : | 2015 dated October 29, 2018. |
| | : | |
| | : | ARGUED:  May 21, 2020 |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, | : | |
| | : | |
| | : | |
| Appellant | : | |

## CONCURRING AND DISSENTING OPINION

**JUSTICE WECHT**                                        **DECIDED:  December 22, 2020**

I join Part I of the Court's opinion in full.  In denying a request for records under the

Right-to-Know Law[1] ("RTKL"), an agency's Open Records Officer ("ORO") may rely upon

---

[1]      65 P.S. §§ 67.101-67.3104.

the averments of an appropriate custodian that the responsive records fall under the law's non-criminal investigatory exemption. *See* 65 P.S. § 67.708(b)(17). However, the agency should provide a sworn statement to substantiate a denial on that basis when the ORO does not perform the search in question. That did not occur here. In fact, the record demonstrates that a representative of the Department of Correction's Bureau of Health Care Services, Cathy Montag, relayed her conclusion as to the applicability of the exemption to the Department's ORO, Andrew Filkosky, in person, thus depriving the parties of a paper trail. Filkosky, in turn, reflexively accepted Montag's view and (erroneously) denied the request in full. Throughout this litigation, the Department essentially has argued that Filkosky was correct to rely upon Montag's assessment. But that position elides the fact that Filkosky held out that assessment as his own. Without an attestation from Montag—the individual who, according to the Department, actually performed the requisite inspection—there is no way to credit the agency's final response, either before the Office of Open Records ("OOR") or on appellate review.

Given the Commonwealth Court's well-documented findings, it is beyond dispute that the Department abdicated its duty to perform a good faith search for responsive records. The Department now claims that the court imposed a burdensome requirement that an ORO must perform a search personally. While it is true that denials of records requests are issued on the ORO's authority, *see id.* § 67.903(3), the Department's assertion is a red herring, as the court said no such thing about the scope of that officer's obligations. Rather, it correctly applied the duty of good faith to the agency as a whole, and found that the duty was not satisfied here. No fewer than four Department employees (Filkosky, Montag, Bureau Director Christopher Oppman, and Department counsel Chase DeFelice)—some of whom apparently received little to no formal RTKL training despite

routinely handling requests for health records[2]—received the request for responsive health records, properly redacted and anonymized. Yet each made the same erroneous assumption about the records at issue despite the clear language of the request. They then failed to perform a search for responsive documents and misinformed the requesters about the results, baldly citing disclosure exemptions that plainly were inapplicable. Consequently, the requesters incurred hundreds of thousands of dollars in legal expenses to litigate the refusal to release presumptively public records. Six years on, the matter remains unresolved.

Where an ORO does not personally conduct a search but instead relies upon the efforts of other custodians within the agency in denying a request for responsive records, those custodians should provide an affidavit or some sort of formal statement regarding the parameters of the search they conducted and the grounds for denial. That formality would help to avoid the situation here, where it appears that no one at the Department made much effort to find what the requesters were asking for, where Department representatives communicated in person seemingly to circumvent a written record, and where the ORO simply passed off the Bureau representative's conclusion as his own, necessitating costly litigation. An agency should not be able to escape liability by claiming that the ORO was just following the advice of others. Otherwise, the statutory duty of good faith would be rendered nugatory.

That being said, I dissent from Part II of today's opinion because the Majority sustains the lower court's award of attorney fees based upon a misreading of Section 1304 of the RTKL. As the statute's evolution makes clear, the RTKL's drafters erred when they amended the prior version of that section, then found in the Right-to-

---

[2]     *See, e.g.*, Notes of Testimony, 8/28/2017, at 28-29 (Direct Examination of Christopher Oppman).

Know Act ("RTKA"), in an attempt to conform it with the terms of art used throughout the new law. Accordingly, I am constrained to agree with the Department that the unambiguous language of subsection 1304(a) forecloses an award of attorney fees here.

A brief history of the RTKL's genesis is necessary in order to understand the significance of the General Assembly's blunder in the context of the matter before us. Prior to the adoption of the RTKL in 2008, agencies were required, "[u]pon receipt of a written request for access to a record," to "make a good faith effort to determine if the record requested is a public record and to respond as promptly as possible under the circumstances existing at the time of the request." 65 P.S. §§ 66.3-3(a), 66.3-4(a) (repealed). The RTKA directed agencies to issue "responses" via "written notice granting, denying or partially granting and partially denying access to a record." *Id.* § 66.1 (repealed). If a Commonwealth agency failed to issue a response "within ten business days of receipt of the written request for access, the written request for access shall be deemed denied." *Id.* § 66.3-3(a) (repealed); *see also id.* § 66.3-4(a) (repealed) (deeming record requests to non-Commonwealth agencies denied if no response is sent within five business days). Responses denying access to a record, or requests that were "deemed denied" by operation of law, were appealable under the RTKA upon the requester's filing of "exceptions with the head of the agency denying the request." *Id.* § 66.3-5(a) (repealed).[3] That agency head, or his designee, then had thirty days to issue a "final

---

[3] Section 66.3-5 ("Final agency determination") of the RTKA provided:

(a) Filing of exceptions. If a written request for access is denied or deemed denied, the requester may file exceptions with the head of the agency denying the request for access within 15 business days of the mailing date of the agency's response or within 15 days of a deemed denial. The exceptions shall state grounds upon which the requester asserts that the record is a public record and shall address any grounds stated by the agency for delaying or denying the request.

determination" based upon the requester's grounds for exception. *Id.* § 66.3-5(b) (repealed).

If an agency's final determination was adverse to the requester, the requester then could seek judicial review in the courts of common pleas or in the Commonwealth Court, depending on whether the agency in question was a "Commonwealth agency" or a "non-Commonwealth agency." *Id.* § 66.4(a)-(b) (repealed). Reasonable attorney fees and litigation costs were awardable under the RTKA, in the court's discretion, if the court "reverse[d] an agency's final determination," and found either of the following circumstances:

(1) the agency willfully or with wanton disregard deprived the requester of access to a public record subject to access under the provisions of this act; or

(2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.

*Id.* § 66.4-1(a)(1)-(2).

With the adoption of the RTKL, the General Assembly removed the authority to review an agency's response from the "agency head" and instead created a quasi-judicial administrative appeal mechanism, by which a neutral "appeals officer" designated by the Office of Open Records (for Commonwealth and local agencies), or by a judicial, legislative, or law enforcement agency pursuant to Section 503 of the RTKL, reviews the

---

(b) Determination. Unless the requester agrees otherwise, the agency head or his designee shall make a final determination regarding the exceptions within 30 days of the mailing date of the exceptions. Prior to issuing the final determination regarding the exceptions, the agency head or his designee may conduct a hearing. The determination shall be the final order of the agency. If the agency head or his designee determines that the agency correctly denied the request for access, the agency head or his designee shall provide a written explanation to the requester of the reason for the denial.

65 P.S. § 66.3-5 (repealed).

underlying denial and "[i]ssue[s] a final determination on behalf of the Office of Open Records or other agency." *Id.* §§ 67.1101(a)-(b), 1102(a)(4). Like an agency's final determination under the RTKA, a final determination issued by the appeals officer also is subject to judicial review under the RTKL. *See id.* § 67.1301.

As far as court costs and fees are concerned, however, the General Assembly amended the statutory prerequisites for receiving an award. Section 1304 now provides:

> **(a) Reversal of agency determination.**--If a court reverses the final determination of the appeals officer or grants access to a record after a request for access was deemed denied, the court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to a requester if the court finds either of the following:
>
> > (1) the agency receiving the original request willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith under the provisions of this act; or
> >
> > (2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.

65 P.S. § 67.1304(a)(1)-(2). By its plain terms, before a reviewing court may entertain an award of attorney fees to a requester pursuant to Section 1304 of the RTKL, the court must either "reverse[] the final determination of the appeals officer *or* grant[] access to a record after a request for access was deemed denied," 65 P.S. § 67.1304(a) (emphasis added). In this case, because the Department's erroneous denial of the original request for access to inmate health records was reversed by an OOR-appointed appeals officer and not by the Commonwealth Court, neither of those conditions were satisfied. Thus, the requesters were not entitled to an award of litigation costs and attorney fees.

Notwithstanding the clear language of subsection 1304(a), the Commonwealth Court and today's Majority point to the alternative usage of the phrase "final determination" in subsection 1304(a)(2) to find ambiguity in the former provision.

Significantly, the language that appears in subsection 1304(a)(2) is identical to the language employed in subsection 66.4-1(a)(2) of the RTKA, and it is the only provision of the RTKL that still retains a reference to the final determination of an "agency." This is particularly noteworthy because agencies no longer issue final determinations. Rather, with the RTKL's promulgation, the decision to be issued by an agency's open records officer to grant or deny a request for access to records was designated as a "final response." 65 P.S. § 67.502(b)(1). With that in mind, it is evident that the Legislature simply failed to revise subsection 1304(a)(2) so that it conformed with the new terms of art employed throughout the RTKL, the remainder of which accurately refer to the final determination *of an appeals officer*.[4]

This legislative oversight is confirmed by subsection 1304(a)(2)'s contemplation of an agency's "assert[ion]" of "exemptions, exclusions or defenses . . . in its final determination." 65 P.S. § 67.1304(a)(2). For Commonwealth agencies like the Department of Corrections, the appeals officer who issues a final determination is selected by the OOR. As a neutral arbiter, that officer would not be "asserting" exemptions, exclusions, or defenses on behalf of the agency. To the contrary, the agency makes the assertions; the appeals officer merely decides if they are applicable. That the appeals officer is not synonymous with "the agency" throughout the RTKL is further evidenced by the fact that the former is not a party to an appeal in the Commonwealth Court or the courts of common pleas. The appeals officer's only role at that point is to

---

[4]     *See, e.g., id.* §§ 67.502(b)(2)(iii) (requiring open records officers to maintain copies of written requests "for 30 days or, if an appeal is filed, until a final determination is issued under section 1101(b) or the appeal is deemed denied"); 1101(b)(1)-(3) (outlining procedures governing an appeals officer's final determination); 1102(a)(4) (defining the duty of an appeals officer to "[i]ssue a final determination on behalf of the Office of Open Records or other agency"); 1301(a) ("Within 30 days of the mailing date of the final determination of the appeals officer relating to a decision of a Commonwealth agency . . ."); 1302(a) ("Within 30 days of the mailing date of the final determination of the appeals officer relating to a decision of a local agency . . .").

certify and transmit the record, evincing that officer's quasi-judicial function. The agency itself is tasked with defending the denial of access. That is why the appeals officer for a Commonwealth agency ultimately issues a final determination "on behalf of the Office of Open Records." *See id.* § 67.1102(a)(4).

In the face of this, the Majority resorts to various tools of statutory construction, even wandering briefly into the thickets of the RTKL's legislative history as it journeys toward its conclusion that the most natural reading of subsection 1304(a) produces "an absurd result." *See* Maj. Op. at 21, 24. But to be clear, the Legislature's readily apparent drafting error in subsection 1304(a)(2) could not render subsection 1304(a)'s operative phrase—"the final determination of the appeals officer"—ambiguous. Here, the Commonwealth Court did not reverse the final determination of the Department's OOR-appointed appeals officer. Consequently, no attorney fees or costs were available. While I agree that the effect here is unusual—*i.e.*, that a requester can receive an award of court costs and attorney fees if an agency denies a record in bad faith and the OOR affirms the denial (or a record is deemed denied), but that no awards are available if the OOR reverses a bad faith denial and thereby removes the need for a reviewing court to "reverse [the appeals officer's] final determination"—that result is not due to any ambiguity in the RTKL whatsoever. Instead, it is precisely what the statute now commands. As such, this is not a case where this Court needs to, or even can, resort to canons of construction. We simply must highlight this patent mistake and leave it to the General Assembly to correct its own oversight. Our role allows us to go no further.

Accordingly, I would affirm the Commonwealth Court's finding of bad faith, reverse the award of fees and costs, and remand for further proceedings on the requesters' unaddressed alternative grounds for sanctions.

Justice Todd joins this concurring and dissenting opinion.